## Walters v. Commonwealth.

(Decided May 11, 1923.)

### Appeal from Fayette Circuit Court.

1. Criminal Law—Demurrer to Amended Warrant Does Not Attack Authority to Amend.—Where the warrant of arrest was amended in the circuit court on appeal from an inferior court, a demurrer filed thereto by defendant simply raises the question of the sufficiency of the warrant as amended, and not the authority to make the amendment.

2. Criminal Law—Warrant May be Amended in Circuit Court on Appeal from Inferior Court.—A warrant of arrest may be amended upon the trial thereof in the circuit court upon appeal from an inferior court in which the prosecution was begun.

3. Criminal Law—Amendment Shown by Record is Presumed to Have Been Made Under Authority of Court and with Consent of Accused. —Where an order of the circuit court recites that the warrant on which accused was tried in the inferior court was amended upon its face, the Court of Appeals will presume, in the absence of a showing to the contrary, not only that it was amended with the permission of the court, but also that defendant did not object thereto, and cannot assume that defendant did not have knowledge of, or consent to, the amendment.

4. Searches and Seizures—Federal Constitutional Amendments 4 and 5 Apply Only to Federal Government.—The immunities of the fourth and fifth amendments to the federal Constitution from unreasonable search and seizure and from compulsory testimony against one's self relate only to the activities of the federal government and its officers, and those rights are not within the privileges and immunities which the fourteenth amendment protects

against state action except in so far as due process of law is concerned.

5. .Criminal Law—Searches and Seizures—Guaranty Against Unreasonable Search and Compulsory Testimony Excludes Evidence Obtained Under Invaild Search Warrant.—Under Constitution, sections 10 and 11, forbidding unreasonable searches and seizures and compulsory self-incrimination, which are violated by the search of a citizen of the state or his protected property by a state official without a valid search warrant, evidence obtained by such search is inadmissible against him in a criminal action.

6. Criminal Law—Evidence Obtained by Federal Agents Acting Under Valid Federal Warrant is Admissible in State Courts.—Since the state guaranties against unreasonable search do not apply to acts of federal officers, evidence obtained by such officers by a search under a warrant not conforming to state law may be admitted against accused in a prosecution in the state court, though such evidence will be excluded by the state court unless the acts of the federal officers were under a warrant valid under the federal law.

7. Courts—Validity of Federal Warrant Tested Under Federal Law, But Method of Testing Governed by State Law.—In determining whether a federal search warrant under which a federal agent made a search was valid, the federal law furnishes the test, but the method of making that test is not governed by the federal practice.

8. Criminal Law—Oral Evidence is Inadmissible to Show Validity of Warrant Valid on its Face.—Under the state practice, the only inquiry made in passing upon the admissibility of evidence obtained by a search is whether the search warrant and the affidavit on which it was issued were valid on their face, and the court will not determine a collateral issue by hearing parol evidence as to the facts on which the warrant was based, as is the practice in the federal courts.

9. Courts—Searches and Seizures—Postive Statement of Ultimate Fact is Sufficient to Sustain Warrant.—A positive statement in an affidavit for a search warrant of the ultimate fact authorizing the search is sufficient to establish reasonable cause for the issuance of the warrant, and that rule will be applied in determining the validity of a federal warrant under which the federal agent made a search, notwithstanding a contrary holding by lower federal courts, in the absence of a controlling decision by the United States Supreme Court.

10. Intoxicating Liquors—Affidavit for Search Warrant Held Sufficient. —An affidavit for a search warrant which stated that affiant personally saw defendant carry a basket of bottles of whiskey from the premises to be searched and knew that intoxicating liquor was possessed and sold there is sufficient to authorize the issuance of the warrant.

11. Intoxicating Liquors—Affidavit Held to Justify Permission to Make Search in Nighttime.—Under Espionage Act of Congress, June

15, 1917, title 11, section 10 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, section 10496¼j), under which search warrants for liquor unlawfully possessed must be issued, and which requires that the warrants shall be served in the daytime, unless the affidavits are positive that the property is in the place to be searched, in which case the warrant may direct that it may be served either in the daytime or nighttime, an affidavit stating positively that defendant had taken whiskey from the premises in question, and that whiskey was unlawfully possessed and sold there, was sufficient to authorize permission to search in the nighttime.

12. Searches and Seizures—Search Warrant Need Not Expressly State Duties Enjoined by Law on Officers Serving it.—A search warrant directing the executing officer to report and act concerning the same as required by law is sufficient without specifically stating the duties imposed upon the officer by the law under which the warrant is issued, which the officer is presumed to know.

13. Criminal Law—Objection to Return to Search Warrant Not Admissible in Determining Admissibility of Evidence Obtained Thereby.—An objection that the officer's return to a search warrant was defective is immaterial in determining the admissibility of evidence obtained by the search, since those defects cannot affect the prima facie validity of the affidavit or warrant, which alone is considered in determining that issue.

KING SWOPE for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The appellant was arrested upon a warrant issued by a justice of the peace, charging him with unlawfully having in his possession intoxicating liquor. He was convicted upon his trial before the justice, and also upon the trial of his appeal to the circuit court. By this appeal from the latter judgment, he complains that the court erred in overruling his demurrer to the warrant, and in the admission of the evidence of his guilt, all of which was obtained under a search warrant.

The record shows that after the warrant of arrest had been amended on its face in the circuit court, defendant filed a demurrer thereto, and same was overruled. It is not contended the warrant was defective after its amendment, but it is insisted that because there is no order of record permitting the commonwealth's attorney to amend it, the amendment was unauthorized, and that this question was raised by the demurrer. To this we cannot

agree. The demurrer simply raised the question of the sufficiency of the warrant as amended.

It is a settled rule of practice in this jurisdiction, as is conceded, that a warrant of arrest may be amended upon the trial thereof in the circuit court upon appeal from an inferior court in which the prosecution was begun. And where, as here, an order of the circuit court recites the fact that it was amended upon its face, this court will presume, nothing appearing to the contrary, not only that the warrant was amended with the permission of the court, but that it was not objected to by the defendant.

We certainly cannot assume that the court did not sanction what the record recites was done, or that the defendant did not have knowledge of and consent to the same, there being no record of any objection by him.

2. All of the evidence of defendant's guilt was obtained by federal officers upon a search of his place of residence under a search warrant issued by a commissioner of the federal district court, and it is the contention of the appellant that none of this evidence was admissible, (a) because evidence obtained under a federal search warrant, even if valid, is not available on a prosecution in the state courts, and (b) because both the search warrant and the affidavit upon which it was issued were fatally defective.

We take it as settled that the immunities of the fourth and fifth amendments to the federal Constitution from unreasonable search and seizure, and from being compelled to give evidence against one's self, relate only to the activities of the federal government and its officers, and that these rights are not within the privileges and immunities which the fourteenth amendment protects against state action, except in so far as due process of law may be concerned. Twining v. New Jersey, 211 U. S. 78, 53 L. Ed. 97; Weeks v. United States, 232 U. S. 383, 58 L. Ed. 652, L. R. A. 1915B 834, Ann. Cas .1915C 1177; Silverthone Lumber Co. v. United States, 251 U. S. 385, 64 L. Ed. 319; Gouled v. United States, 255 U. S. 298, 65 L. Ed. 647; Amos v. United States, 255 U. S. 313, 65 L. Ed. 654, and cases cited in the note to Johnson v. State, 19 A. L. R. 641. We also think it is clear that the question of due process of law is not here involved.

But sections ten and eleven of the state Constitution forbid unreasonable searches and seizures and compulsory self-incrimination in substantially the same terms

as do the fourth and fifth amendments, *supra,* and beginning with Youman v. Commonwealth, 189 Ky. 152, 224 S. W. 860, we uniformly have held that these guaranties of the state Constitution are denied by the search of a citizen of the state, or his protected property, by a state official without a valid search warrant, and that evidence so obtained is inadmissible against him in a criminal action.

It is manifest, however, that the immunities of the state Constitution are limited to activities of the state government and its officials, and cannot protect a citizen of the state, or his property, from search by a federal officer acting under federal authority. We might even say, and sustain it by authority, that we are not concerned at all with how federal officials obtain competent evidence they may possess of a defendant's guilt of an infraction of a state law, just as this and other courts uniformly have held with reference to private citizens.

But as the same act of a citizen of both a state and the United States renders him amenable to both sovereignties under which he must live, if each but protects him under similar guaranties of their respective constitutions against unlawful activities of its own officers, it would result that state officials might search a citizen without a warrant and the evidence thus unlawfully obtained be used against him in the federal courts, and he likewise would be without protection in the state courts against unreasonable searches by federal officers other than by an action for damages, which both the courts of this Commonwealth and of the United State have held inadequate.

Surely the same guaranties by the dual sovereignty mean more than that, and they should be so construed as more effectively to protect the citizen's immunities from governmental interference, which each within its sphere has declared sacred.

To us it seems possible that this end may be attained only by holding, either that no prosecution in the state courts can be sustained by evidence obtained by federal officers acting under authority or color of office, or that such evidence will be incompetent unless obtained under a valid federal search warrant, as is the rule with reference to state officers.

If the former plan were adopted, the state trial courts would be relieved of the necessity of passing upon the legality of acts of federal officers upon a collateral in-

quiry, but it does not seem to us reasonable or right that either government should be precluded from using evidence legally obtained, simply because discovered by officers of the other, and it certainly cannot be maintained that the provisions of either the state or federal Constitution mean that a search under a valid search warrant, issued by either sovereignty, is an unreasonable search.

We therefore conclude that the evidence introduced against defendant was competent, provided the federal search warrant under which it was obtained was valid, but not otherwise.

Its validity, of course, depends upon the federal law, and must be tested thereby, but as to the method of making that test, we do not feel bound by the practice prevailing in the federal courts, which is materially different from the rule obtaining in this state for testing the validity of search warrants issued by state authorities.

Most state courts obviate the whole trouble we have encountered in this and similar cases by rule of practice which refuses to halt a criminal trial to investigate the collateral issue of how competent evidence was obtained, and admits such evidence, however obtained. But we have adopted, in part, the rule prevailing in the federal courts. Our rule goes no farther, however, than to admit the evidence, if, upon a collateral investigation by the court, the warrant and affidavit upon which it issued are valid upon their faces, but does not permit, as is the federal practice, the introduction of oral evidence to overcome the presumption—usually indulged upon a collateral attack—in favor of the validity of the official acts of officers acting within their jurisdiction. And our only reason for permitting even such an investigation of the affidavit is, that without the affidavit there is no jurisdiction to issue a search warrant at all.

The basic difference in the two views seems to be that the federal courts do not consider the validity of the affidavit and warrant a collateral issue, and we do. To our minds, this case is evidential that such issue is, or at least may be, collateral, since obviously the issuance of a search warrant by a federal officer was not intended as the basis, and is not in fact a part, of the prosecution in the state court. It certainly is not so limited, and its use for that purpose at least appears merely incidental or collateral.

At any rate, we do not fell called upon to adopt a different rule of practice in testing a. federal warrant for the purpose of determining the admissibility in our courts of evidence obtained thereunder, from the rule we have adopted with reference to such warrants issued by state authorities.

Within that rule, we uniformly have held that the affidavit furnishes probable cause if it states facts or circumstances from which the officer issuing the warrant, in the exercise of his own judgment, might reasonably believe intoxicating liquors are unlawfully concealed or possessed in a described place. And we further have held in several recent cases, that the statement by the affiant of the ultimate fact, as a fact and not merely upon information and belief, is sufficient to justify the necessary belief by the judicial officer and to sustain the warrant. Mattingly v. Commonwealth, 197 Ky. 583, 247 S. W. 938; Caudill and McLemore v. Commonwealth, 198 Ky. 695, 249 S. W. 1005.

A contrary view was expressed by the federal circuit court of appeals in Giles v. United States, 284 Fed. 208, reversing the district court, but we have been unable to find any decision from the Supreme Court of the United States so holding, and at least until that court passes upon the question, we are not willing to surrender our own judgment as to the sufficiency of an affidavit or the validity of a search warrant issued thereon, even though issued under a federal law and involving a construction of same.

The affidavit in this case states that the affiant "personally saw John Walters carry a basket of bottles of whiskey from same tonight and knows that intoxicating liquor is possessed and sold at residence and premises No. 926 S. Limestone street, being the premises of Collis Walters, and being situate in the city of Lexington and state of Kentucky, and within the district above named."

Hence if the search warrant had been issued upon this affidavit by a proper state officer, we would be compelled to hold, under our decisions, that the affidavit was sufficient to support the warrant, even without the allegation that affiant saw a basket of bottles of whiskey being carried from the house. There was no such allegation as this in the Giles case, and even that case is thus clearly distinguished.

It is therefore our judgment that the affidavit was sufficient under the federal statutes and Constitution, not

materially different from our own, to support the warrant.

It is contended that the search warrant is *prima facie* invalid (1) because it directs a search "in the day or night time," and (2) because, after ordering the search of the described premises, it simply directs the executing officer "to report and act concerning the same as required of you by law," instead of specifically stating the several acts required of him by law.

It is agreed that the federal regulations governing the issuance and service of search warrants in this kind of case are found under title XI of the Espionage Act of Congress, 40 Stat. 228. Section 10 thereof provides:

"The judge or commissioner must insert a direction in the warrant that it be served in the daytime, unless the affidavits are positive that the property is on the person or in the place to be searched, in which case he may insert a direction that it be served at any time of the day or night."

Pertinent portions of the affidavit in this case are quoted above, and it is positively stated therein that intoxicating liquor "is possessed and sold" on the described premises, and the affidavit is such as in our judgment authorized the commissioner to direct a search in the nighttime.

The duties of the officer in serving the warrant, and which it is claimed should have been specifically stated in the warrant, are to execute and return same within ten days after its date, and to leave with the defendant a copy of the warrant and an inventory of the property seized. These duties are enjoined upon the officer executing a search warrant by several sections of the Espionage Act, but the act does not direct that same shall be set out in the search warrant.

In support of this contention, counsel for appellant again relies upon the case of Giles v. United States, *supra*, in which a search warrant, otherwise fatally defective in several respects, is also criticised for its failure to contain specific directions requiring it to be executed and returned in ten days; and in which it is stated "the great weight of authority is that the warrant should be specific and complete within itself."

The statement that the warrant must be specific and complete within itself is unquestionably sound in so far as concerns a description of the premises to be searched, the property to be searched for, and whether a search

could be made in the nighttime, for the statute requires the warrant to contain this information, and it was more especially with reference to deficiencies in these respects in the warrant in the Giles case that the statement was made. But the officer is presumed to know his duties carefully defined by the same statute, which with equal care directs the judicial officer what the warrant shall contain, but does not direct that these statutory duties of the administrative officer shall be incorporated therein.

We do not think it was intended that every search warrant issued should be thus encumbered, nor do we see any necessity therefor. Hence we conclude that a search warrant which is specific and complete in itself, as above indicated, and as is the one here, is not rendered invalid simply because it directs the administrative officer "to report and act concerning same as required of you by law" without specifying these duties.

Objection is also made of the officer's return on the warrant, in that it does not state that a copy thereof or an inventory was left with the defendant. But these matters are wholly immaterial here, since they cannot affect the *prima facie* validity of the affidavit or warrant, which is as far as our investigation carries us in determining the admissibility of the evidence obtained thereunder.

Being of the opinion that the trial court did not err in admitting the evidence complained of, and perceiving no prejudicial error in the record, the judgment is affirmed.

The whole court sitting.