## STATE v. HITESHEW
(No. 1624; October 24, 1930; 292 Pac. 2)

148

The cause was submitted for the appellant on the brief of *H. S. Ridgely,* of Cheyenne, Wyoming.

The cause was submitted for the State on the brief of *William O. Wilson*, Attorney General, and *R. J. Jackson*, Assistant Attorney General, of Cheyenne, Wyoming.

BLUME, Chief Justice.

On March 18, 1929, an information was filed against H. M. (Jack) Hiteshew, hereinafter mentioned as the appellant, charging that on December 29, 1928, he had unlawfully in his possession certain intoxicating liquor containing more than one-half of one per cent of alcohol by volume and fit for use for beverage purposes, to-wit, forty-one pints of whiskey and three quarts of beer. On this charge the defendant was convicted and sentenced, and from the judgment rendered against him he brings his appeal to this court.

Prior to the filing of the information and on December 29, 1928, an affidavit for a search warrant was filed before Daniel W. Gill, as United States commissioner for the district of Wyoming, stating in substance that affiant had reason to believe that intoxicating liquors were manufactured, possessed and sold for intoxicating liquors in two rooms at the left of the entrance on the first floor above the basement at 212 West 18th Street, Cheyenne, Wyoming, and giving the reasons for that belief. Thereupon and on the same day the United States commissioner above mentioned issued a warrant for the search of the premises above described for intoxicating liquor. The return of the warrant shows that forty-one pints of whiskey, one-fourth gallon of whiskey, one-half pint of whiskey and some wine were seized, all of which was turned over to the sheriff. On April 5, 1929, a motion to suppress the evidence obtained under the warrant was filed by the appellant. It appeared from the evidence at the hearing on the motion that the search above mentioned was made

jointly by officers of the federal government and by officers from the sheriff's office of Laramie County; that all the liquor seized was found in the basement of the apartment house in which the appellant lived, except about one-half pint, which was found in one of the rooms of the apartment occupied by the appellant and described in the information. The court suppressed the evidence obtained by the search of the basement, but refused to do the same with respect to the evidence as to the half-pint of whiskey seized in the apartment of the appellant. On the trial of the main case counsel for the appellant renewed his objections to the introduction of any and all evidence obtained under the search warrant, but the court admitted that which related to the one-half pint above mentioned. A few other facts will appear hereinafter.

1. The search warrant was directed to the commissioner of prohibition, his assistants, agents, and inspectors, or any or either of them. The return on the warrant was made by Charles F. Peterson, but he failed to disclose therein that he was one of the parties to whom it was directed. The testimony, however, disclosed that he was one of the officers to whom the warrant was directed and that he was present at and conducted the search. The return might have been amended and must be so regarded here. Furthermore, the point was not raised in the court below, so far as we can find; nor are we able to see from the evidence appearing in the record wherein the failure above mentioned is material or prejudicial. Walters v. Commonwealth, 199 Ky. 182, 190, 250 S. W. 839; State v. Bushey, 126 Me. 363, 138 Atl. 566. It is not contended that the affidavit or warrant herein were illegal in any other respect under the federal constitution and laws, and we shall therefore, in the further discussion of this case, assume the legality thereof thereunder.

2. The affidavit in support of the search warrant, and the warrant itself, do not describe the intoxicating liquor to be seized with that particularity which was said to be necessary in State v. Peterson, 27 Wyo. 185, 214, 194 Pac. 342, 13 A. L. R. 1284. It is the contention of counsel for the appellant that even though the warrant was valid according to the constitution and laws of the United States and the decisions thereunder by the federal courts, still it must be held to be invalid if it does not comply with the decision in State v. Peterson. This is the main point in the case. That question, and the converse thereof—namely, whether evidence obtained under a search warrant invalid under the federal constitution and laws should be excluded—has but recently been pressed upon the attention of the state courts by reason of the federal and state laws on the subject of intoxicating liquors. The federal courts have for many years held, that in prosecutions in those courts, state officers are ordinarily considered as strangers or private individuals, and evidence unlawfully obtained by the latter will nevertheless not be excluded. Burdeaux v. McDowell, 256 U. S. 465, 41 Sup. Ct. 574, 65 L. Ed. 1043, 13 A. L. R. 1159. To so regard state officers is technically, perhaps, correct, but with due deference to the highest and most eminent tribunal in our country, it may be questioned whether that is true under a broad conception of our form of government. States formed the federal government, and, far from being strangers thereto, they are expressly recognized in the document creating it, and the props to uphold and maintain it will, upon ultimate analysis, be found to be furnished, indirectly at least, and up to this time in any event, as much by state as by federal officers. The rule above mentioned does not apply when federal and state officers cooperate, and the United States Supreme Court has recently, in the case of Gambino v. United States, 275 U. S. 310, 48 Sup. Ct. 137,

72 L. Ed. 293, 52 A. L. R. 1381, made an important exception thereto, holding that evidence obtained by an unlawful search by state officers cannot be admitted in the federal courts in states which have no laws for liquor control. In any event, state courts are somewhat differently situated than federal courts. The latter operate under one government; the state courts are bound not only by the constitution and laws of the state, but also by the constitution of the United States as well as by the laws passed pursuant thereto. Nor are we tied to any precedent, which courts are always hesitant to overturn, and we are in position, accordingly, to investigate the question before us with an open mind and give a decision which we deem to conform to the true spirit underlying the duality of our government, and is calculated, we hope, to maintain respect for both federal and state governments, and will not in its result give opportunity to shock the sense of justice of the ordinary citizen, or inspire contempt for all government, by regarding an officer of the law, either of the state or of the United States, in a varying light, depending merely on the place where he may assert and attempt to uphold the dignity of the law; for law, conceived as the supreme power of the land, is to the average mind, a unity, no matter from what source it may spring.

Both phases of the question now before us have recently been passed upon by several courts. In Kentucky, Missouri and Idaho it is held that, when evidence is obtained by federal officers by a seizure unlawful under the laws of the United States, it must be suppressed in a prosecution in the state courts. State v. Arregui, 44 Ida. 43, 254 Pac. 788, 52 A. L. R. 463; State v. Rebasti, 306 Mo. 336, 267 S. W. 858, 861; Walters v. Commonwealth, 199 Ky. 182, 250 S. W. 839; Caudill v. Commonwealth, 202 Ky. 730, 261 S. W. 253; State v. Horton, 312 Mo. 202, 278 S. W. 661. In the Idaho and Missouri cases it happened that the warrants were invalid under both state and federal

laws, but we think that we have correctly construed the holding of these courts. The rule laid down in these cases is, that it is as much the duty of the state courts as it is of the federal courts, to uphold the provisions of the 4th amendment to the constitution of the United States regarding unreasonable searches, and that if the evidence of the federal officers is obtained unlawfully, and cannot for that reason be received in the federal courts, it cannot be transformed into lawful evidence by being offered in the state courts. Just to indicate the theory of these cases, it is said in part in State v. Rebasti:

"It is unthinkable that a state court is powerless to protect the constitutional rights of its citizens guaranteed by the federal constitution. To hold the evidence of the federal agents admissible in this case is to pronounce that doctrine. It is to say that the act of an officer, or of any other individual, is lawful or unlawful, not on account of the character of the act, but on account of the court in which it is called in question. * * * In this case the federal officer violated the constitutional rights of the defendant, and violated the constitutional restrictions upon his own behavior as a federal officer. Had the case been pending in the federal court, he could not have testified, because his act in procuring his information was unlawful. His case, however, is pending in the state court, and it is contended that he * * * can bring his misdemeanor to a state court, and there have his lawless disregard of his official duty appraised as a meritorious performance. * * * The only safe and sound construction of the situation is to say that when a federal officer violates the constitutional restriction upon his conduct, so as to make evidence procured in such violation incompetent, that it is incompetent everywhere offered."

If this holding is correct, and we have no doubt that it is, it would seem to follow as a necessary corollary that evidence obtained under warrants valid under the federal laws should, at least in the absence of countervailing reason, be held valid when called in question in courts of

this state. And in that connection we cannot forget that the National Volstead Act is substantially the same as the law on intoxicating liquors in this state; that the constitutional restriction of the United States against unreasonable searches and seizures is about the same as the constitutional restriction on that subject in our state, and that the federal courts, including the Supreme Court of the United States, have, speaking broadly, interpreted such restriction as rigidly as this court. If the contention for the appellant is correct, then a warrant, to be recognized by the courts of this state, must necessarily comply with its laws in even minor particulars. It would have to be issued by an officer of this state, upon affidavits filed before him, and addressed to an officer or officers of this state. Yet no such contention is made, and the contrary has been expressly ruled in Caudill v. Commonwealth, supra, and Barnett v. Commonwealth, 207 Ky. 160, 268 S. W. 1084, quoted from infra. Moreover, we apply the rule of comity in many matters arising under the laws of other states. We can certainly do no less in matters arising under the liquor laws of the United States. Federal officers perform numerous functions. They frequently interfere with the liberty and property of our citizens, yet cannot be sued in trespass if they perform their duties lawfully under the laws of the United States. Simply because they cooperate in their search with officers of the state cannot well make their acts unlawful if they are otherwise lawful. While our local federal officers are not officers *of* this state, they are officers *in* this state, administering laws which are binding upon the people thereof. They are not strangers in our midst. They can be regarded neither as officers of a foreign government nor as private individuals. We said in State v. George, 32 Wyo. 223, 231 Pac. 683:

"The State of Wyoming, while a sovereign state, is, nevertheless, in another sense, but a locally and self-governing community of the United States. The constitution and the laws passed pursuant thereto govern the people of this state as much as the constitution and laws of this state. The government of the United States is not a foreign government in its relation to the government of the states, the agents of the former are not agents of a foreign government in relation to the latter, and any contrary doctrine could not but be deprecated as sowing pernicious seeds of ultimate disruption of the nation."

In Walters v. Commonwealth, supra, the court said:

"It does not seem to us reasonable or right that either government should be precluded from using evidence legally obtained, simply because discovered by officers of the other, and it certainly cannot be maintained that the provisions of either the state or federal constitution mean that a search under a valid search warrant, issued by either sovereignty, is an unreasonable search. We therefore conclude that the evidence introduced against defendant was competent provided the federal search warrant under which it was obtained was valid, but not otherwise. Its validity, of course, depends upon the federal law, and must be tested thereby."

The court, it is true, further held that in the absence of a decision on the point by the Supreme Court of the United States it would use its own method of determining whether or not probable cause was shown in the affidavit for the warrant. But inasmuch as it is not contended herein that the warrant, except in the particular already mentioned, was not valid under the laws of the United States, that matter need not be considered any further. In the case of Barnett v. Commonwealth, 207 Ky. 160, 268 S. W. 1084, the court said in part:

"It is next insisted that the search warrant in this case was void because it did not direct the officer to arrest the person or persons in charge of the building searched

or liquor found, and Section 14 of Chapter 33 of the Acts of 1922 is cited. Appellant, however, fails to take into consideration that this was a federal search warrant. If a search be made under the authority of a federal search warrant valid as such, the evidence obtained by such search is valid.''

In Roberts v. Commonwealth, 206 Ky. 75, 266 S. W. 880, the court said:

''Evidence obtained by federal officers acting under a federal search warrant is not admissible unless the warrant is valid under federal law.''

And in Phillips v. Commonwealth, 206 Ky. 37, 266 S. W. 893, the court upheld a federal search warrant which was valid under the federal law. In United States v. Viess, 273 Fed. 279, the court, upholding a search warrant valid under local law, said:

''A search having been made under a local statute which was legal and the seizure thereof lawful, Section 25, supra (of the National Prohibition Act) does not change the lawful possession to unlawful when offered as evidence by the United States in a prosecution for a violation of the National Prohibition Act.''

See also Novak v. State, 185 Wis. 616, 200 N. W. 369, 202 N. W. 336 on rehearing.

We cannot, accordingly, upon reason and authority, hold the search in this case to have been unreasonable and the evidence procured thereby inadmissible.

3. Appellant also complains because he was not permitted to show in detail the facts as to the search in the basement of the building, in a room not described in the search warrant, and he argues that his right of cross-examination was denied him. This matter was gone into fully on the motion of appellant to suppress and the court

suppressed all of the evidence as to the search in that room. The fact of the search was fully shown on the trial, but the details were excluded. For some reason, counsel changed his position, occupied by him at the time of the motion to suppress, and wanted the details to appear in the trial of the main case, the reasons for which are not apparent. That the officers unlawfully searched other premises could not be a defense herein to appellant, and we are unable to see how, if the jury had learned of a quantity of intoxicating liquor found in the basement, it could have been influenced in appellant's favor. We think that, if anything, the contrary would have been true. It may be that in some circumstances the evidence might have been material. Appellant, for example, contended that the liquor which was testified to as having been found in his room was not in fact found, but was put there by one of the searching parties. If it was appellant's contention that it was part of the liquor found in the basement—a theory not well maintainable under the evidence as it appears in the record—that contention should have been called to the attention of the court and an offer made to show further necessary connecting facts. Under the record before us the action of the court was in no way prejudicial to the appellant.

4. The information, as already stated, charged the defendant with having in his possession "intoxicating liquor," to-wit, "41 pints of whiskey and 3 quarts of beer." The evidence admitted in the main case showed merely the possession of one-half pint of whiskey, not quite full. It appears to be the contention of counsel for the appellant, if we understand him correctly, that the appellant could be convicted only if he had in his possession all of the intoxicating liquor specifically mentioned in the information, and that the court was even wrong in the charge that he might be convicted if he had "about"

that amount in his possession; that when a search warrant is issued and a return made thereon showing a certain quantity seized and the evidence as to part of the liquor is suppressed, no prosecution for the possession of liquor, the evidence as to which is not suppressed, is maintainable. Counsel have cited no case in point. The cases cited merely hold that a defendant is entitled to know of the charge against him so as to be able to make a defense. That principle is, of course, fundamental, and appellant in this case had the information required, for after the evidence as to the liquor seized was all suppressed except as to the one-half pint of whiskey, he knew exactly that he would be tried only for the possession of the latter and that point, in fact, was made fully known to the jury by the prosecuting attorney by several statements appearing in the record. Counsel's contention would no doubt have been good if the common law relating to it were in force, for under that law a description of the subject matter of the offense, though unnecessarily minute, was required to be proved as made. State v. Sedlacek, 74 Mont. 201, 239 Pac. 1002. But Section 7463, Wyo. C. S. 1920, provides that no variance in the description of any matter or thing named or described in the information shall be deemed ground for an acquittal of the defendant unless the court shall find that such variance is material to the merits of the case or may be prejudicial to the defendant. That the trial court could not well so find is apparent from what we have already said. In 33 C. J. 739, the rule is stated that an allegation in an indictment as to quantity of liquor illegally sold need not be proved as laid unless the quantity constitutes an essential of the crime, and further, that if the indictment charges a sale of several kinds of liquor, proof of a sale of any one kind is proper and sufficient. For further cases on this point, see State v. Horton, 312 Mo. 202, 278 S. W. 661; Blanks v.

State, 105 Tex. Cr. R. 85, 286 S. W. 1092; State v. Peck, 146 Wash. 101, 261 Pac. 779; Walker v. State, (Tex. Crim.) 21 S. W.(2) 1052. We find no prejudicial error in the record and the judgment of the trial court must accordingly be affirmed, and it is so ordered.

*Affirmed.*

KIMBALL and RINER, JJ., concur.