**Tommy RATLIFF, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky

May 31, 1957.

Claude P. Stephens, Prestonsburg, for appellant.

Jo M. Ferguson, Atty. Gen., William F. Simpson, Asst. Atty. Gen., for appellee.

MOREMEN, Judge.

Appellant, Tommy Ratliff, was convicted in the Floyd Circuit Court of unlawfully possessing intoxicating beverages not intended for lawful use. He was fined $50 and sentenced to 30 days in jail.

On this appeal he complains that the court improperly permitted the introduction of evidence which had been obtained under a defective search warrant.

F. M. Phillips is an investigator for the United States Bureau of Internal Revenue. On September 1, 1955, he appeared before the Hon. Thomas L. Creekmore, Commissioner of a United States District Court, and executed an affidavit for the purpose of obtaining a search warrant. This affidavit describes the building purported to be searched and its location, and contains in general terms a statement that there was then being concealed on that property intoxicating liquor on which the tax had not been paid. The affidavit then continues:

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: Affiant, F. M. Phillips, Investigator Alcohol & Tobacco Tax Unit, Pikeville, Kentucky, states that on September 16, 1955 at 6:20 P.M., he was sitting in above described Steak House and observed a sale of tax-paid whiskey to a customer. Said customer was standing at the end of the bar and placed 3 $1.00 bills and 2–50 cent

pieces on the bar in front of him. The bartender, or proprietor, went to a room in the rear of the building and emerged wrapping two half pints of whiskey in brown wrapping paper. The bartender was only a few feet from affiant at the time and affiant could see the tax stamps on the bottles. The bartender then came to the end of the bar, handed the package to the customer and picked up the money and placed it in his pocket. The violation was in Floyd County, Kentucky, a local option territory."

We stress the flat statement that tax stamps were on the bottle.

A search warrant was issued by the Commissioner and the steak house was raided by three federal officers and a deputy sheriff of Floyd County. They found about 130 half-pints of intoxicating liquors, which bore United States tax stamps.

At the trial of the case in the Floyd Circuit Court, the commonwealth's case was based upon the evidence obtained as a result of this search.

■ We held in Roberts v. Commonwealth, 206 Ky. 75, 266 S.W. 880, that evidence obtained under a federal search warrant is not admissible unless the warrant is valid under federal law. This opinion merely affirmed the law which had been announced in Walters v. Commonwealth, 199 Ky. 182, 250 S.W. 839, 841, where it was held that either government, under our dual system, would not be precluded from using the evidence simply because it had been discovered by officers of the other sovereignty, because the court was of opinion that a search under a valid search warrant issued by either sovereignty was a "reasonable search," as required by Section 10 of the State Constitution and Amendment 4 of the Federal Constitution. The opinion emphasized that evidence obtained was competent only where the federal search warrant was valid, and said:

"Its validity, of course, depends upon the federal law, and must be tested thereby, but, as to the method of making that test, we do not feel bound by the practice prevailing in the federal courts, which is materially different from the rule obtaining in this state for testing the validity of search warrants issued by state authorities."

Other cases that have followed the Walters case are: Ingram v. Commonwealth, 200 Ky. 284, 254 S.W. 894; Caudill v. Commonwealth, 202 Ky. 730, 261 S.W. 253; Vick v. Commonwealth, 204 Ky. 513, 264 S.W. 1079.

■ We must, therefore, examine the affidavit and determine if the facts were sufficient to charge a federal offense. Appellant contends that it is no violation of federal law to sell taxpaid whiskey in dry territory provided the seller has a United States special stamp or license to conduct a business of retail liquor dealer and that a person may have any amount of taxpaid whiskey in his possession so long as he does not sell or offer it for sale. If he sells it, he becomes a dealer and is required to purchase a stamp showing that he has paid the special tax of $50. If he sells without the stamps, he has violated Section 5691 of Title 26, United States Code Annotated, and would be subject to a fine of $5,000 and imprisonment of not more than two years.

At the time of the raid a special federal tax stamp for retail dealers was produced to the officers.

When we return to the affidavit first above partially quoted, we find that the sole federal offense charged was the possession of untaxed liquor, but this seems only to be based on a surmise because the actual fact stated was that the investigator had observed the sale of taxpaid whiskey. We do not believe this was a logical deduction. Therefore, the affidavit was defective because the facts stated do not

support the conclusion alleged in the preamble. If moonshine or untaxed whiskey had been found, a different question would be presented but we are unable to find where the violation of any federal law was charged in the affidavit upon which the search warrant was issued.

The commonwealth, after a full and able discussion of the law applicable, has conceded that the judgment should be reversed.

The motion for appeal is sustained and the judgment is reversed.